G. E. HELD et al., Appellees, v. BOARD OF SUPERVISORS OF
PLYMOUTH COUNTY, Appellants.

DRAINS: Highway Drainage—Reduction of Assessment. Record re-
viewed in detail, and held that a 33 1/3 per cent reduction by the
trial court of an assessment on agricultural lands, to defray the
cost of a highway drainage improvement, was justified.

Headnote 1: 29 C. J. p. 747.

*Appeal from Plymouth District Court.*—C. C. BRADLEY, Judge.

OCTOBER 27, 1925.

REHEARING DENIED FEBRUARY 19, 1926.

APPEAL from a drainage assessment. The facts are fully
stated in the opinion. A reduction of 33 1/3 per cent in the
assessment levied upon the lands of the plaintiffs by the board
of supervisors was made by the court below, and the defendants
appeal.—*Affirmed.*

*E. T. Bedell* and *Nelson Miller,* for appellants.

*Bailie & Edson,* for appellees.

STEVENS, J.—This is an appeal from special assessments
laid upon four 40-acre tracts described as the NW¼ and SW¼
of the SE¼ of Section 17, the SW¼ of the SW¼ of Section 9,
and the NE¼ of the SW¼ of Section 20, all in Township 90,
Range 46, in a highway drainage improvement initiated by the
board of supervisors of Plymouth County under the authority
conferred by Chapter 2-B of the Supplemental Supplement,
1915. Section 1989-b of this chapter is as follows:

"That whenever in the opinion of the board of supervisors
it is necessary to drain any part of any public highway under
its jurisdiction and the land abutting upon or adjacent thereto
in order that said highway may be preserved and improved, and
made more convenient, it may direct the county engineer to

make a survey and report on any part of said highway. In directing the engineer to make such survey the board shall specify in a general way what highway or part thereof they desire surveyed for the purpose of draining the same.''

The corresponding section (7638 of the Code of 1924) contains some important additions not, of course, material to this controversy.

Section 1989-b5, Supplemental Supplement, 1915 (7643 of the Code of 1924), provides for the appointment of a commission, to be composed of the highway engineer and two resident freeholders of the county, to examine the lands and report as soon as possible to the board of supervisors, ''first, as to the amount, if any, which should be paid by the county on account of the county road system'; second, the amount, if any, which should be paid by the township or townships on account of the township road system; and third, the amount, if any, which each 40-acre tract or less within said district shall pay. In making such apportionment the commissioners shall follow the method as nearly as possible now provided for by law in assessing benefits for the construction of levees, ditches, drains and watercourses under Chapter 2-A, Supplement to the Code, 1913. * * *''

Section 7643, Code of 1924, adds the real estate of any railway company subject to assessment within the district to this classification. The drainage district established by the board includes about four and one-half miles of the primary road system of Plymouth County lying parallel with the right of ways of the Illinois Central and Chicago & Great Northern Railway Companies and adjacent thereto, and also about 1,600 acres of agricultural lands. The whole is situated in the Floyd River valley, between the river and the high land west of the highway.

The improvement consists of four main ditches or laterals denominated on the plat and in the evidence as A, B, C, and D, and of certain openings and culverts placed in the highway. The general course of each of these ditches is east and west, intersecting with the river. The general slope of the surface from the higher ground is in an easterly direction toward the river.

Two primary objections and several subsidiary ones were

urged by appellees in their objections filed in the office of the county auditor, which are insisted upon in this court. The primary propositions urged are: first, that the cost of the improvement apportioned by the commissioners to the agricultural lands, which was confirmed by the board of supervisors, is excessive; and, second, that the classification and assessment thereof are inequitable, and not according to the actual benefits conferred. Closely associated with the latter is the claim that the system of drainage provided is inadequate and inefficient, and that the land of appellees is not drained thereby.

The contention of appellees that the cost of the improvement apportioned to the agricultural lands in the district is unjust and excessive may, for the want of sufficient competent evidence to sustain the same, be summarily dismissed from further consideration.

A portion of the W½ of the SE¼ of Section 17 consists of a pond, or ponds, and other parts thereof are grown up to willows. The testimony of the witnesses as to the extent of the low or swamp land contained in this tract is in some conflict, but it covers at least 25 acres. These two forties have the greatest amount of wet or swamp land in the district, and the NW¼ of the SE¼ was assessed on the basis of 100 per cent, and the other tract on the basis of 75 per cent. Main Ditch C crosses the SW¼ of the SE¼ west of the center thereof. The elevations shown upon the plat are so blurred as to be scarcely discernible, but the purpose of this ditch was, in part, to drain the water from the two forties at the lowest point. Elevations taken at this point by engineers for the respective parties during the trial differ widely. The elevations most favorable to appellants show the elevation at the lowest point in the pond to be .2 of a foot higher than the culvert in the main ditch, as we understand it, at the point where it crosses the highway. The elevations taken by the engineers for appellees show that the elevation at the lowest point in the pond is 2.5 feet lower than the elevation of the culvert. The discrepancy in the elevations of these engineers is not explained, and should not have existed. Lay witnesses also testified as to the effect of the drainage improvement. Some of these witnesses testified that the water was all drained off appellees' land, and that the lowest

part thereof has been transformed into good pasture; while other witnesses testified that the drainage was far from complete. Ditch D extends along the south side of the NE¼ of the SW¼, and Ditch B lies a short distance south of the SW¼ of the SW¼. The location of these ditches is favorable to the drainage of the lands of appellees, but the record discloses a great diversity of opinion as to the extent of the improvement worked thereby. We shall not go into detail for the purpose of pointing out or discussing these discrepancies. There is no precise rule for determining the apportionment of the cost to the county, the highway, and the contiguous agricultural lands, nor for determining the classification of the agricultural lands for assessment. No scientific basis was sought for the apportionment,—perhaps none exists. The commissioners testified to the mode of procedure which, in the end, amounted only to the best expression of their united judgments.

It appears from an examination of the schedule showing the classification of the lands for assessment and the amount assessed against each separate parcel, or tract, that those of appellees were assessed as follows:

| | | |
|---|---|---|
| NW¼ SE¼ | Section 17 . | $1,927.50 |
| SW¼ SE¼ | " " | 1,244.04 |
| SW¼ SW¼ | " 9 | 927.12 |
| NE¼ SW¼ | " 20 | 488.44 |

Relatively, this assessment is much higher than that laid upon any other tract in the district, except the SE¼ of the SW¼ of Section 20, which was assessed $406.43, and the NW¼ of the NW¼ of Section 29, which was assessed at $268.60. Two other tracts of appellees' were assessed at substantially the same amount as these latter tracts. The lands of appellees involved in this appeal are apparently more favorably located for drainage by the improvement in question than most of the remaining tracts in the district, and at least the W½ of the SE¼ of Section 17 will be most benefited thereby. Comparisons, however, made by competent engineers quite persuasively indicate that the proportion of the total cost laid upon the lands in question is inequitable and unjust. The testimony on both sides might have been materially strengthened if each of the several tracts

selected for comparison had been fully described and proper elevations shown. Had this been done, a more accurate basis would have been provided for readjusting the assessments. The court below reduced the assessment on the four tracts 33 1/3 per cent. This may or may not be sufficient to equalize the burden. Perfect accuracy in this particular is not obtainable. The conviction that comes from a careful reading of the record is that the assessments in question are inequitable, and much testimony was introduced which tends to show that they are excessive.

Whether the same presumption in favor of the report of the commissioners and the confirmation thereof by the board of supervisors and the same strict rules applied in favor of the proceedings in the matter of drainage improvements established under the general drainage laws for the reclamation and improvement of agricultural lands are to be applied in proceedings under Chapter 2-B, Title X, of the Code, as urged by appellants, we shall not attempt to discuss, as we are satisfied that the decree of the court below makes possible a more equitable apportionment of the cost laid upon the agricultural lands than that levied by appellant.

The contention of appellant that the NE¼ of the SW¼ of Section 20 was not included in the objections filed before the board of supervisors is not sustained by the evidence. This tract was not included in the original draft of the objections, but was later interlined by one of the attorneys for appellees. We are satisfied that the interlineation was made before the objections were heard and passed upon by the board of supervisors.

It is our conclusion that the reduction in the assessment made by the court below is well supported by the record, and its decree is—*Affirmed.*

Faville, C. J., and De Graff and Vermilion, JJ., concur.